# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT KURILKO,<br><br>            Plaintiff,<br>   v.<br><br>TELETECH HOLDINGS, INC., and DOES 1-10,<br><br>            Defendants. | CASE NO. 09cv707 BTM(POR)<br><br>**ORDER DENYING MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO SEVER ACTION** |
| TELETECH HOLDINGS, INC.,<br><br>            Third-Party Plaintiff,<br>   v.<br><br>ASPEN MARKETING SERVICES, INC. and ASPEN ACQUISITION HOLDINGS LLC,<br><br>            Third-Party Defendants. | |

Third-party Defendants Aspen Marketing Services, Inc. ("Aspen Marketing") and Aspen Acquisition Holdings LLC ("Aspen Acquisition") (collectively "Aspen") have filed a motion to dismiss the Third-Party Complaint, or, in the alternative, to strike the Third-Party Complaint or sever the action. For the reasons discussed below, Aspen's motion is **DENIED**.

///

///

## I. BACKGROUND

### A. Kurilko's Claims

On February 20, 2009, Plaintiff Robert Kurilko ("Kurilko") commenced this action against TeleTech Holdings, Inc. ("TeleTech") in the Superior Court of the State of California, County of San Diego. According to the Complaint, on or about May 2006, Kurilko became employed in San Diego, California as the Vice President of Marketing of Newgen Results Corporation ("Newgen"). (Compl. ¶ 3.) Kurilko alleges that TeleTech was the parent company of Newgen and a joint employer. (Compl. ¶ 6.) On or about April 24, 2007, Kurilko entered into a written employment agreement, which included the following term regarding severance pay:

> [I]f the Company (a) terminates your employment due to a change in control (in the event that TeleTech does not offer you a comparable job) or (b) terminates your employment without cause, . . . the Company shall pay you severance compensation equal to the sum of six months of base pay, which shall be payable bi-weekly or in a lump sum as mutually agreed, less legally required withholdings, on the first of the month following the termination date.

(Compl. ¶ 8.)

Kurilko claims that on or about October 1, 2007, he was terminated due to a change in control when TeleTech entered into an Asset Purchase Agreement with Aspen Marketing. (Compl. ¶ 9.) Kurilko alleges that he was not offered a comparable position by TeleTech upon his termination and has not received the severance payment under the employment agreement. (Compl. ¶ 10.) Kurilko asserts claims for breach of the employment agreement, violation of Cal. Labor Code §§ 201, 203, and 218.5, and intentional interference with contractual relations.

### B. Third-Party Claims

On April 8, 2009, TeleTech removed this action to federal court. Shortly thereafter, TeleTech filed its Third-Party Complaint against Aspen.

TeleTech's Third-Party Complaint is based on indemnification provisions in the Asset Purchase Agreement ("APA"). Under the terms of the APA, Aspen agreed to purchase all of the assets of Newgen. Aspen also agreed to make an offer of employment to each current

employee of Newgen (except certain specified individuals not including Kurilko) "on substantially the same terms and conditions provided by Seller taken as a whole, which offer shall remain open until the Closing Date." (APA (Ex. B to Third-Party Compl.), § 2.8(a).) Section 10.1(b) of the APA provides that Aspen shall indemnify Newgen "and their managers, members, directors, officers, employees, Affiliates and agents at all times against and in respect of Losses arising from or relating to . . . any breach of Section 2.8(a) and 2.8(c)."

TeleTech contends that if Kurilko prevails on his claim that he was not offered comparable employment, Aspen is obligated to indemnify TeleTech under §§ 2.8(a) and 10.1(b) of the APA. TeleTech asserts claims for breach of contract and contractual indemnification.

### C. Prior Lawsuit Against Newgen

On February 8, 2008, Plaintiff filed a state court action against Newgen to recover the severance payments that are allegedly owed to him. (San Diego Superior Court Case No. 37-2008-077697.) On December 22, 2008, Newgen filed for bankruptcy under Chapter 7 of the Bankruptcy Code, resulting in a stay of the action.

## II. DISCUSSION

Aspen argues that TeleTech's Third-Party Complaint should be dismissed because (1) TeleTech has no standing to sue on the APA; (2) even if TeleTech has standing to sue, under the terms of the APA, Aspen is not liable for Kurilko's severance claims or any other claims under Kurilko's employment agreement; and (3) any alleged breach by TeleTech of Kurilko's employment agreement does not implicate a breach of Aspen's obligations under the APA. The Court is not persuaded by any of these arguments.

///
///
///

## A. <u>Standing</u>

Aspen argues that TeleTech does not have standing to sue for indemnification. Section 2.8(a) provides, "Buyer shall indemnify Seller for any Losses arising from or relating to any breach of this Section 2.8(a)." "Seller" is defined in the introduction of the Agreement as Newgen Results Corporation, Carabunga.com, Inc., and Newgen Results Canada, Ltd. The introduction indicates that TeleTech ("Parent") is a party "solely with respect to Section 5.2, Section 5.4, Section 5.5, Section 5.7, and ARTICLE X of the Agreement."

However, Section 10.1(b) (part of Article X) provides: "From and after the Closing Date, Buyer and Holdings shall jointly and severally indemnify and hold harmless Seller and their managers, members, directors, officers, employees, Affiliates and agents at all times against and in respect of Losses arising from or relating to . . . any breach of Section 2.8(a) and Section 2.8(c)." "Affiliate" is defined as follows:

> "Affiliate" means, with respect to any Person, any other Person who directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlled" and "controlling" have meanings correlative thereto.

(APA § 1.1.)

Kurilko alleges that TeleTech was a joint employer who "maintained centralized control over Newgen's operations, including but not limited to Newgen's labor relations." (Compl. ¶ 6.) If Kurilko's allegations are true, TeleTech meets the definition of an "Affiliate" and has standing to sue for indemnification for a breach of Section 2.8(a).

Aspen argues that the fact that the APA specifically refers to "Parent" in other sections but does not in Section 10.1(b) indicates that the parties did not intend Section 10.1(b) to apply to TeleTech. However, one could make the opposite argument that the parties could have excluded "Parent" from the definition of "Affiliate" if they wised to prevent TeleTech from suing for indemnification. Under the plain meaning of Section 10.1(b), if TeleTech is an "Affiliate" of Newgen (a matter that the Court does not decide now), TeleTech has standing to sue under Section 10.1(b).

### B. Liability Exclusions

Aspen contends that even if TeleTech has standing to sue for indemnification, TeleTech's claims fail because the APA excludes liability on the part of Aspen for (a) claims under Kurilko's employment agreement and (2) severance claims by former Newgen employees or "Hired Employees."

The definition of "Assumed Liabilities" excludes, among other things, "Severance Liabilities." (APA, §1.1.) "Severance Liabilities," is defined, in turn, as "any . . . severance costs . . . or any other employee benefit arrangement relating to Seller's employees listed on Schedule 1.3 hereto and all former employees of Seller." (Id.)  Kurilko is not included in the list of employees on Schedule 1.3.

The allocation of liability for severance claims is discussed in more detail in Section 2.8(a), which provides:

> On the Closing Date, Buyer shall make an offer of employment to each current employee of Seller . . . on substantially the same terms and conditions provided by Seller taken as a whole, which offer shall remain open until the Closing Date. Each of Seller's employees who receive and accept an offer of employment from Buyer (the"Hired Employees") on or before the Closing Date shall become employed by Buyer effective as of the date immediately following the Closing Date. . . . Any liability for severance pay to terminated employees under Seller's informal severance policy more particularly described on Schedule 2.8 incurred in connection with any current employee of Seller who receives an offer of employment pursuant to this Section 2.8(a) and who does not become a Hired Employee (each, a "Non-Hired Employee"), shall be retained by Buyer, and Seller shall have no obligations with respect to such employee, including with respect to such liabilities. Buyer shall indemnify Seller for any Losses arising from or relating to any breach of this Section 2.8(a). Any liabilities incurred in connection with any employee of Seller listed on Schedule 1.3 hereto or any former employee of Seller shall be retained by Seller and Buyer shall have no obligations with respect to such employees, including Severance Liabilities. In addition, any severance obligations due to any Hired Employees for any periods on or prior to the Closing Date shall be retained by Seller, and Buyer shall have no obligation with respect to such severance obligations. Seller shall indemnify Buyer for any Losses arising from or relating to any breach of this Section 2.8(a).

Aspen argues that Kurilko is a "former employee" of Newgen and that, therefore, any liability for severance payments to Kurilko was retained by Newgen/TeleTech. However, upon reading Section 2.8(a) in its entirety, it is clear that the term "former employee" refers to employees of Newgen who were separated from Newgen before the closing of the

agreement. In describing employees who were in the employ of Newgen up until the closing, the APA uses the term "current employee."

In its Reply Brief, Aspen makes the alternate argument that Kurilko is a "Hired Employee" because, according to Newgen's cross-complaint in the prior state action, Kurilko was hired by Aspen as an Executive Vice President and has been employed in that position since October 1, 2007, the closing date of the Asset Purchase. (Aspen's RJN.) Under § 2.8(a), "any severance obligations due to any Hired Employees for any periods on or prior to the Closing Date shall be retained by Seller, and Buyer shall have no obligation with respect to such severance obligations."

However, at this point in time, it is unclear to the Court whether Kurilko qualifies as a "Hired Employee," within the meaning of § 2.8(a). Section 2.8(a) provides:

> On the Closing Date, Buyer shall make an *offer of employment* to each current employee of Seller . . . *on substantially the same terms and conditions provided by Seller taken as a whole*, which offer shall remain open until the Closing Date. Each of Seller's employees *who receive and accept an offer of employment* from Buyer (the"<u>Hired Employees</u>") on or before the Closing Date shall become employed by Buyer effective as of the date immediately following the Closing Date.

(Emphasis added.) Reading the first and second sentences together, it appears that a "Hired Employee" is one who receives and accepts an offer of employment *that complies with the requirements of § 2.8(a)* – i.e., the offer is on substantially the same terms and conditions provided by Newgen/TeleTech taken as a whole. Whether Aspen's offer of employment to Kurilko was on substantially the same terms and conditions is in dispute.

Aspen also relies on the fact that Schedule 1.2 excludes the following from the "Assumed Liabilities":

> All obligations and liabilities (other than accrued vacation obligations for Hired Employees and *liabilities to Non-Hired Employees set forth in Section 2.8(a)*) under all employment agreements or offer letters to current or former employees including, without limitation, Dan Powell, Chris Howie and Robert Kurilko or any offer letter and employment agreement listed on Schedule 3.15(g).

(Aspen, Ex. B.) (Emphasis added.) Aspen argues that under this provision (hereinafter referred to as the "Employment Agreement Exclusion"), it is not liable for any claims,

including severance claims, under Kurilko's employment agreement. The Court is not persuaded by this argument.

First and foremost, although Aspen may not have actively assumed *liability* for severance claims under employment agreements, Aspen may still have to *indemnify* Teletech/Newgen for such claims if they constitute a loss "arising from or relating to any breach of this Section 2.8(a)." "One who assumes a liability, as distinguished from one who agrees to indemnify against it, takes the obligation of the transferor unto himself." Bouton v. Litton Indus., Inc., 432 F.2d 643. 651 (3d Cir. 1970). Schedule 1.2 limits the assumption of liability under employment agreements but does not preclude the obligation to indemnify in the event that Aspen's breach of contract gives rise to a claim for severance under the employment agreement.

In addition, uncertainty is created by the fact that Kurilko may not meet the definition of a "Hired Employee" or a "Non-Hired Employee." Section 2.8(a) provides:

> Any liability for severance pay to terminated employees under Seller's informal severance policy more particularly described on Schedule 2.8 incurred in connection with any current employee of Seller who receives an offer of employment pursuant to this Section 2.8(a) and who does not become a Hired Employee (each, a "Non-Hired Employee"), shall be retained by Buyer, and Seller shall have no obligations with respect to such employee, including with respect to such liabilities.

If Aspen made an offer of employment, although *not* on substantially the same terms and conditions, and Kurilko accepted, Kurilko arguably does not qualify as a "Non-Hired Employee" or a "Hired Employee." The agreement does not address this middle category of employee at all, leaving it unclear what the parties intentions were with respect to employees who accepted employment with Aspen on different terms and conditions.

Moreover, Schedule 1.2 appears to conflict with other provisions of the contract. The "Severance Liabilities" excluded from the definition of "Assumed Liabilities" include any compensation or benefit arrangement relating to Seller's employees listed on Schedule 1.3 (which does not include Kurilko) and all former employees of Seller. (APA, § 1.1.) Similarly, Section 2.8(a) provides: "Any liabilities incurred in connection with any employee of Seller listed on Schedule 1.3 hereto or any former employee of Seller shall be retained by Seller

and Buyer shall have no obligations with respect to such employees including Severance Liabilities." These provisions do not exclude liability for severance claims under employment agreements by individuals who are not listed on Schedule 1.3 and are not former employees. Therefore, it is unclear whether the parties intended Schedule 1.2 to limit liability for severance claims under employment agreements.

Because the terms of the APA do not necessarily preclude an obligation on the part of Aspen to indemnify TeleTech for Kurilko's severance claims, the Court denies Aspen's motion to dismiss. The Court does not, however, make any findings at this juncture regarding the proper interpretation of Section 2.8(a) and the Employment Agreement Exclusion because it may be necessary to consider extrinsic evidence in making this determination. See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232-33 (Del. 1997) (explaining that when the provisions in controversy are fairly susceptible of different interpretations, then the interpreting court must look beyond the language of the contract to ascertain the parties' intentions).

## C. Breach of Employment Agreement v. Breach of APA

Aspen's final argument is that Kurilko's claim that TeleTech breached the employment agreement does not implicate Aspen's duties and obligations under the APA. Kurilko is suing TeleTech under the employment contract provision that promises severance equal to six months of pay if Newgen terminates his employment due to a change in control and TeleTech does not offer him "a comparable job." Aspen argues that Teletech's obligations under the employment agreement have nothing to do with Aspen or Section 2.8(a) of the APA.

Based on the record before it, the Court cannot tell whether Kurilko's claims implicate Aspen's duties under Section 2.8(a). If Kurilko's claim is that the employment offered by Aspen was not comparable to his employment with Newgen, then Aspen's duties under

Section 2.8(a) may come into play.[1] On the other hand, if Kurilko does not dispute that the employment offered by Aspen was comparable but, rather, contends that the employment offer had to come directly from TeleTech, then Aspen's performance of the APA is not implicated.

Because there is a possibility that Kurilko's claims implicate the performance of Aspen's duties under the APA, the Court denies Aspen's motion to dismiss.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Aspen's motion to dismiss TeleTech's Third-Party Complaint. Aspen's motion to strike and motion to sever are based on the same grounds as the motion to dismiss. Therefore, the Court **DENIES** these motions as well. Aspen shall file an answer to the Third-Party Complaint within 15 days of the entry of this Order.

**IT IS SO ORDERED.**

DATED: October 26, 2009

Honorable Barry Ted Moskowitz
United States District Judge

---

[1] Aspen implies that an offer of a "comparable" job is different from an offer of employment on "substantially the same terms and conditions as a whole." The Court does not decide this issue but observes that there may be overlap between the two standards.